UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALOMAR HEALTH, et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>'N HEALTH NETWORK PARTNERS, LLC,<br><br>       Defendant. | Case No.: 25-cv-2272-AGS-MSB<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION (ECF 19) AND MOTION TO STAY PENDING ARBITRATION (ECF 20)** |

The parties here have several partnership agreements, some with arbitration clauses, others without. The key question is whether one agreement's arbitration clause trumps another's explicit approval of judicial proceedings. It does not.

## BACKGROUND

Years ago, the parties signed four agreements: (1) the "Management Services and Participation Agreement" between defendant 'N Health Network Partners, LLC, and plaintiff "Arch Health Partners, Inc."—which does business as "Palomar Health Medical Group" (ECF 19-1, at 5); (2) the "Participating Provider Agreement" between those same two parties (ECF 1-2, at 40); (3) the "Preferred Provider Agreement" between those same two parties (ECF 2-1, at 5); and (4) another "Preferred Provider Agreement" between 'N Health and the other plaintiff, "Palomar Health" (ECF 2-1, at 85). The first two agreements contain arbitration clauses. The latter two do not.

## DISCUSSION

In general, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But when "contracts are separate, the lack of an arbitration clause" in one agreement "means disputes over [that] agreement are not subject to arbitration." *Johnson v. Walmart*, 57 F.4th 677, 682–83 (9th Cir. 2023) (cleaned up). And "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning *whether* an agreement

1

to arbitrate has been made." *Id.* at 680–81 (emphasis added). So, this Court is tasked with "determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan v. Premier Diabetic Servs.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "If the answer is yes to both questions, the court must enforce the agreement." *Id.* Here, however, the answer to the second question is no.

This case's only remaining dispute involves plaintiffs' allegation that 'N Health breached the terms of "Exhibits G of each of the [Preferred Provider Agreements]," which "require ['N Health] to pay" plaintiffs as detailed in that exhibit. (ECF 1, at 6.) 'N Health concedes that the Preferred Provider Agreements do "not contain an arbitration clause," but still argues for arbitration because it thinks the Management Services Agreement "incorporates" the Preferred Provider Agreements as "component agreements[,] thereby binding" plaintiffs to its terms—"including its arbitration provision." (ECF 19, at 6.)

So, does the Management Services Agreement's arbitration provision govern the Preferred Provider Agreements? "To determine the reach of a particular agreement, we must look to its express terms" and interpret any "arbitration clauses in connection with the rest of the agreement[.]" *Johnson*, 57 F.4th at 682 (cleaned up).

Let's start with the Preferred Provider Agreements under which plaintiffs sued. Those agreements not only lack arbitration clauses, but they also include an affirmative statement allowing that the parties "may[] resort to *judicial proceedings*." (*See* ECF 2-1, at 14, 94 (emphasis added).) And the Preferred Provider Agreements are fully integrated: they "constitute[] the entire agreement of the parties hereto with respect to this subject matter hereof and supersede[] any prior or contemporaneous oral and written understandings or agreements." (*Id.* at 15, 95.)

The defense ignores the agreements' explicit consent to judicial proceedings and instead argues that the Court should order arbitration "notwithstanding [the] integration clauses." (ECF 23, at 5.) But even adopting the reasoning of the case it relies on for that proposition, the defense still loses: "the mere inclusion of an integration clause in the later agreement does not create an irreconcilable inconsistency *if the later document is silent on*

2

*a particular matter and is not otherwise inconsistent.*" *Change Lending, LLC v. Montoya*, No. cv 24-544 GBW/JHR, 2025 WL 872530, at *4 (D.N.M. Mar. 19, 2025) (emphasis added). The Preferred Provider Agreements are far from silent regarding plaintiffs' ability to "resort to judicial proceedings" for this dispute. (ECF 2-1, at 14, 94.) And the Court must "give effect to every part" of the contract. Cal. Civ. Code § 1641.

Still, the defense asserts that the Management Services Agreement's language "incorporates" the Preferred Provider Agreements and "bind[s]" plaintiffs to the arbitration provision. (ECF 19, at 6.) Not so. For starters, the arbitration provision—which is admittedly broad—limits itself to "any dispute arising out of or relating to *this Agreement*." (ECF 19-1, at 17–18 (emphasis added).) At the agreement's outset, it defines "the 'Agreement'" to mean only the "Management Services and Participation Agreement." (*Id.* at 5.) And the contract takes care to use different terms in different contexts. For example, when it refers to the full panoply of contracts that the parties signed, it uses the term "Company Participant Provider Agreement." (*See id.* at 6 (defining the term); *see also id.* at 11 (discussing obligations "pursuant to a Company Participant Provider Agreement").) Yet "Company Participant Provider Agreement" is absent from the arbitration clause.

Nor does the defense's discussion of the Participating Provider Agreement's arbitration clause—which also states that it only applies to "this Agreement"—move the needle in its favor. (*See* ECF 19, at 11; ECF 1-2, at 52.) In fact, the Participating Provider Agreement's arbitration clause seems to cut *against* the defense's argument. It demonstrates that when the contracting parties wanted to include arbitration provisions in subsequent agreements, they knew how to and, in fact, did.

Finally, the defense asserts that "[a]ny resolution of Plaintiffs' claims will necessarily require interpretation of the [Management Service Agreement]'s terms." (ECF 19, at 13.) But 'N Health does not cite to any part of plaintiffs' complaint that would require the Court or the parties to look outside the four corners of the fully integrated Preferred Provider Agreements to resolve plaintiffs' claims. It instead asserts that because the Management Service Agreement broadly "discusses the calculation, allocation, and

distribution of" funds, and because "Plaintiffs challenge Defendant's withholding and offsets—actions that directly follow the [Management Service Agreement]'s requirements," this case "must be resolved through arbitration as set out in" that agreement. (ECF 23, at 3.) When weighed against the plain language of both contracts, though, the defense's general discussion of purportedly overlaying financial considerations—without any reference to which parts of the Management Service Agreement plaintiffs' claims would require anyone to interpret—is unpersuasive. And 'N Health's reliance on *Truck Insurance Exchange v. Certain Underwriters at Lloyd's London*, No. 2:24-cv-08157-SB-JC, 2024 WL 5439268 (C.D. Cal. Nov. 15, 2024), fares no better. The *Truck* plaintiff had "no right to payment" that was "independent of" the contract containing the arbitration agreement. *Id.* at *3. Plaintiffs here, on the other hand, root their claims in the Preferred Provider Agreements' "Exhibit[] G," which has no arbitration agreement and independently creates a payment right: "90% of the paid amount" from a fee schedule. (ECF 1, at 6; *see also* ECF 2-1, at 33, 113.)

So, 'N Health has not met its "burden" of showing "that the agreement to arbitrate encompasses the dispute at issue." *See Ashbey v. Archstone Prop. Mgmt.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

## CONCLUSION

The motion to compel arbitration is **DENIED**, and the motion to stay this case pending arbitration is **DENIED as moot**. The April 17, 2026 hearing is vacated.

Dated:  April 14, 2026

_____
Hon. Andrew G. Schopler
United States District Judge

4